# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE BUR-CAM GROUP, LLC,** | : | No. 3:10cv240 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| **SAMUEL E. PEARSON, III;** | : | |
| **EDWARD G. LANG;** | : | |
| **JOHN RECKLING;** | : | |
| **DEBRA RECKLING; and** | : | |
| **COMMERCIAL CONCEPTS, LTD.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is Defendant Edward G. Lang's motion to dismiss. Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of a real-estate deal between the Plaintiff The Bur-Cam Group, Inc. ("Bur-Cam") and Defendants John and Debra Reckling ("the Recklings"). (See Complaint (hereinafter "Complt.") Exh. A to Notice of Removal (Doc. 1)). On or about January 30, 2008 plaintiff purchased real estate located at 1451 North Elmira Street in Athens Township, Pennsylvania. (Id. at ¶ 7). Plaintiff paid the Recklings $1,300,000 for this property. (Id.). The property contained an improved commercial structure where a Jiffy Lube operated. (Id. at ¶ 8).

At the time of plaintiff's purchase, the Jiffy Lube on the premises was operated

by Peanut Oil, LLC, a Pennsylvania limited liability company. (Id. at ¶ 9). Peanut Oil operated Jiffy Lube stores in New York and Pennsylvania. (Id. at ¶ 10). The company has three members: Defendants Samuel Pearson and Edward Lang and Deborah L. Pickett. (Id.). Pickett has filed a Chapter 7 bankruptcy petition in the United States District Court for the Middle District of Pennsylvania and is not named in the instant lawsuit. (Id.).

Plaintiff financed the real estate purchase through a $1,300,000 mortgage with Indiana First Savings Bank of Indiana, Pennsylvania. (Id. at ¶ 12). A twenty-year lease between Bur-Cam and Peanut Oil was part of this real estate transaction. (Id. at ¶ 11). Monthly lease payments started at $10,833.33 at the beginning of the lease. (Id.). Peanut Oil paid the first monthly lease payment to plaintiff, though substantially later than the lease agreement required. (Id. at ¶ 13). Beginning in March 2008, Peanut Oil did not make another lease payment. (Id. at ¶ 14). On June 16, 2008, Peanut Oil filed for Chapter 7 bankruptcy protection in the United States District Court for the Middle District of Pennsylvania. (Id.). The property remained vacant at the time plaintiff filed its complaint. (Id. at ¶ 15). Plaintiff has been unable to sell or lease the property. (Id.).

Plaintiff alleges that Bur-Cam became interested in purchasing the property in question in late 2007, when the Recklings owned the property. (Id. at ¶ 16). The Recklings had recently purchased the site, paying $1,100,000 in October 2007. (Id.). The proposed real estate transaction was coordinated by Defendant Andrew

2

M. Bronsac, the president of Defendant Commercial Concepts, a firm specializing in commercial real estate. (Id. at ¶ 17). Commercial Concepts had an extensive business relationship with Defendants Pearson "and/or" Lang, as well as with Pickett. (Id. at ¶ 18). This relationship also involved various business entities, such as Peanut Oil, Vipergas, LLC and JDSK Oil, LLC. (Id.). Commercial Concepts was directly involved in the purchase and sale of these businesses. (Id.).

Commercial Concepts and Bronsac were involved directly in the transaction here in question. (Id. at ¶ 19). Plaintiff alleges that "Brosnac and Commerical Concepts acted as a conduit for passing information from and to the Plaintiff and Indiana First from and to the Recklings and Peanut Oil, LLC." (Id.). These actions included, "deliver[ing] financial and other information from Peanut Oil to Bur-Cam and Indiana First, assist[ing] in getting the Lease Agreement signed between Bur-Cam and Peanut Oil and coordinat[ing] getting documents approved and signed by the Recklings." (Id.). Plaintiff also contends that a similar relationship existed between Pearson, Pickett and/or Lang and Commercial Concepts in other financial transactions. (Id. at ¶ 20). Bronsac "had direct contact with Pearson and Pickett and had access to financial information" shared with potential purchasers in this deal. (Id. at ¶ 21). A similar relationship existed between Commercial Concepts and the Recklings. (Id. at ¶ 21).

Before purchasing the property, plaintiff and Indiana First Bank performed a detailed financial analysis of the business. (Id. at ¶ 23). They did so based on the

3

information provided by Peanut Oil through Commercial Concepts. (Id.). Their analysis convinced plaintiff that the deal was financially sound. (Id.). The deal ended up being a bad one; Peanut Oil had misrepresented its financial condition, as well as the financial condition of the Jiffy Lube on the site. (Id. at ¶ 24). The Jiffy Lube could not sustain enough business to pay the rent charged by plaintiffs, making the property worth much less than the sale price of $1.3 million. (Id. at ¶ 25).

Plaintiff points to several misrepresentations made about Peanut Oil's financial condition before the sale. (Id. at ¶ 26). First, balance sheets for December 24, 2007 and December 31, 2007 provided by Peanut Oil list real estate assets of $4.48 million and cash on hand at $342,332. (Id. at ¶ 26A). When Peanut Oil filed for bankruptcy, no real estate assets were listed, and cash on hand amounted to only $4,000. (Id.). The company's balance sheet for December 31, 2007 shows accounts receivable of $45,765; the bankruptcy schedules show accounts receivable of $8,823.31. (Id. at 26B). The balance sheet from December 31, 2007 shows equipment valued at more than $1.7 million, but the bankruptcy schedules show machinery and equipment of $12,000. (Id. at ¶ 26C). Income statements from the Jiffy Lube showed an annual net operating profit of no less than $82,000 and rent payments of $112,500. (Id. at ¶ 26D). These statements did not reflect the truth, since the Jiffy Lube could not and did not ever generate sales which would justify such statements. (Id.). Plaintiff alleges that Bur-Cam relied on the information provided by defendants and their agents in deciding to purchase the property in

4

question.  (Id. at ¶ 30).  Plaintiff paid substantially more than the real estate was worth.  (Id.).  Though plaintiff paid $1,300,000 for the property, its actual value was approximately $250,000.  (Id. at ¶ 31).

Plaintiff also alleges that Pearson and Lang, Peanut Oil principals, knew of the company's poor financial position.  (Id. at ¶ 33).  Despite this knowledge, they provided plaintiffs with false financial information about the business and agreed to lease premises from plaintiffs when they knew they could not afford the rent.  (Id. at ¶ 34).  Pearson and Lang made these statements to ensure that the deal went through.  (Id.).  Plaintiff alleges that Pearson and Lang benefitted directly from the sale, as did the Recklings, because the Recklings owed Peanut Oil more than $400,000 from past real estate transactions.  (Id. at ¶ 35).  The Recklings repaid their debt to Peanut Oil after selling the subject property.  (Id. at ¶ 36).   Plaintiff also contends that the fraudulent actions by Pearson and Lang were the "substantial and proximate reasons" for the sale of the real estate.  (Id. at ¶ 37).  Plaintiff would not have purchased the property but for the actions and promises of Pearson and Lang.  (Id. at ¶ 38).

Plaintiff filed the initial complaint in this action in the Court of Common Pleas of Bradford County, Pennsylvania on November 25, 2009.  The complaint raises three counts of fraud.  Count I is raised against Defendants Lang and Pearson, alleging that they knew of Peanut Oil's poor financial condition, yet supplied false financial information to plaintiff and plaintiff's lender to convince them to approve of

5

the real estate transaction. Lang and Pearson benefitted from this agreement by having the debt repaid to them by Peanut Oil after the sale. Count II alleges that Brosnac and Commerical Concepts engaged in fraud by participating in the defendants' scheme to sell property at inflated prices. Count III alleges that Defendants John and Debra Reckling likewise engaged in fraud in these transactions. Before Lang was formally served with the complaint, and before other defendants were served, Lang removed the case to this court. (<u>See</u> Notice of Removal (Doc. 1) at ¶¶ 5-6). Lang then filed the instant motion to dismiss. (Doc. 2). The parties briefed the issue, bringing the case to its present posture.

**Jurisdiction**

Plaintiff Bur-Cam Group, LLC is a limited liability company organized and based in Pennsylvania. The individual members of that company are all Pennsylvania citizens. The individual defendants are citizens of other states. Defendant Commercial Concepts, Ltd. is a dissolved corporation that was incorporated in California and had its principal place of business in that state. The amount in controversy exceeds $75,000. As such, the court has jurisdiction pursuant to 28 U.S.C. § 1332. The court is sitting in diversity, and therefore the substantive law of Pennsylvania shall apply. <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000) (<u>citing</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendant seeks dismissal of the complaint pursuant to both Federal Rule of

Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

7

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Under the rule, "plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Id. at 224. In addition, a plaintiff must allege "who made the representation to whom and the general content of the misrepresentation." Id.

**Discussion**

Defendant urges dismissal on two grounds. The court will address each in turn.

### i. Sufficiency of Fraud Allegations

Under Pennsylvania law, "any definition of fraud necessarily includes a knowing misrepresentation of a fact by one party which induced another party to act or fail to act, which in the end caused damage to the party who relied upon the misrepresentation." Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87, 100 (Pa. Super. Ct. 2007). Thus, fraud consists of five elements: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Rizzo v. Michener, 584 A.2d 973, 980 (Pa. Super. Ct. 1991). "A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated." Colaizzi v. Beck, 895 A.2d 36, 39-40 (Pa. Super. Ct. 2006).

As explained above, plaintiff alleges that defendants misrepresented the value of the property and the rental income that could be obtained therefrom. Bur-Cam also alleges that defendants knew that the value of the property was less than they represented to the plaintiff. Further, these misrepresentations were designed to convince plaintiff to agree to a purchase price more than $1 million more than the actual value of the property. This misrepresentation led the plaintiff to purchase the property. Plaintiff suffered damage when the true value of the property became apparent and the rental property disappeared. Plaintiff has thus pled the elements of common-law fraud in Pennsylvania stated above.

Defendant Lang argues, however, that this pleading is not specific enough.

9

Defendant first argues that the allegations against him are insufficient to meet Rule 9(b)'s requirement of particularity. Defendant points to allegations that he misrepresented Peanut Oil's financial condition because balance sheets provided to plaintiff before the purchase represent a different financial condition for the company than do bankruptcy documents filed six months later. Such allegations are imprecise and amount merely to bald assertions and conclusory statements. Moreover, defendant contends, no allegations in the complaint point to specific conduct from Defendant Lang that indicate he personally engaged in any fraudulent conduct, other than an allegation that he provided false financial information. Such an allegation lacks the specificity required by the rule. In addition, even if plaintiff did plead a misrepresentation from Lang, plaintiff does not allege that this representation was material to the transaction, or that it relied on the misrepresentation.

The court will deny the motion on these grounds. In the complaint, plaintiff alleges that Lang, in concert with other Peanut Oil members, misrepresented the financial condition of Peanut Oil, which was to pay rent on the Jiffy Lube located in the subject premises. They did so by providing financial statements about the company to plaintiff and its bank that they knew were false. While plaintiff does not assert specifically which information Lang provided, the complaint nevertheless alleges that he assisted in preparing false financial statements about Peanut Oil that misled plaintiff. Plaintiff alleges that defendants misrepresented the assets of the corporation and the amount of cash on hand. Lang and the other defendants

10

provided these statements as the parties negotiated about the purchase of land. They also relied on these misrepresentations in concluding that their investment could yield profit. Though these statements do not identify the exact date, time and place of the alleged misrepresentations, they definitely are a "means of injecting precision and some measure of substantiation into their allegations of fraud." Lum, 361 F.3d at 224. They apprise the defendant of the specific fraudulent conduct about which plaintiff complains and thus meet the requirements of Rule 9(b). See Petro-Tech, Inc. v. Western Co. of N. America, 824 F.2d 1349, 1362 (3d Cir. 1987) (finding that plaintiff had pled facts of fraud with sufficient particularity since "[p]laintiffs have alleged the acts involved and the people who they believe committed them. At least at this stage of the case plaintiffs need not attribute each individual act to the individual defendant who committed it."); Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984) (allegations of fraud were sufficient because "[t]he complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation."). The court will therefore deny the motion on these grounds.

### ii. Limited Liability

Defendant also argues that he should be dismissed from the case because he cannot be held personally liable for the actions of Peanut Oil, which is a limited

liability company. Peanut Oil has filed for bankruptcy, and thus no recovery is possible from the company. In an attempt at recovery, plaintiff has named Lang as an individual, but his limited liability in the company prevents him from being sued in place of Peanut Oil. Since plaintiff has not sufficiently pled its fraud claim against Lang, defendant cannot attempt to "pierce the corporate veil" and hold Lang individually liable for the actions of a corporate entity.

The defendant here argues that plaintiff attempts to make him liable for the wrongs of Peanut Oil, a corporation. In Pennsylvania, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ahsley, 393 A.2d 637, 641 (Pa. 1978); see also, College Watercolor Group, Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 208 (Pa. 1976) (finding that a corporation can be an independent entity even if there is only a single shareholder). As such, "there is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). At the same time, "whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." Ashley, 393 A.2d at 641. Still, "[t]he corporate entity or personality will be disregarded only when the entity [is] used to defeat public convenience, justify wrong, protect fraud or defend crime." Sams v. Redevelopment Authority of New Kensington, 244 A.2d 779, 781 (Pa. 1968).

The court will deny the motion on these grounds as well. In this case, the

12

allegations are that Lang participated directly in the fraud allegedly perpetrated on the plaintiff, and that he used the corporation as a means of executing this scheme. In Pennsylvania, "the corporate entity will be disregarded only when it is used to defeat public convenience, justify wrong, perpetrate fraud, or defend crime." Brindley v. Woodland Village Restaurant, 652 A.2d 865, 867 (Pa. Super. Ct. 1995). As such, Lang could be liable, despite the existence of a corporate entity as a party to the sale. See Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983) (finding that "corporate officers may be held liable for misfeasance . . . [but not] for mere nonfeasance."); Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1967) ("[t]he defrauded creditor or 'victim' of a business transaction with an undercapitalized corporation, for instance, often has a strong case for piercing the veil of a 'sham' corporation. The controversy in such cases invariably involves some degree of reliance by the plaintiff, contributing to the fraud, or undue advantage or trick accenting the injustice.") (citation omitted).

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE BUR-CAM GROUP, LLC, | : | No. 3:10cv240 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| SAMUEL E. PEARSON, III; | : | |
| EDWARD G. LANG; | : | |
| JOHN RECKLING; | : | |
| DEBRA RECKLING; and | : | |
| COMMERCIAL CONCEPTS, LTD., | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 19th day of April 2010, Defendant Edward G. Lang's motion to dismiss (Doc. 2) is hereby **DENIED**.

                                              BY THE COURT:

                                              s/ James M. Munley
                                              **JUDGE JAMES M. MUNLEY**
                                              **UNITED STATES DISTRICT COURT**